Richabd S. Lane, J.
These motions are considered together and raise an interesting question of priority between conflicting security interests under the Uniform Commercial Code.
A brief chronological history is essential to understanding the question:
1) On November 25, 1969 defendant sold its drug business at 568 West 125th Street in New York City (hereinafter sometimes referred to as the “ premises ”) to Aberdeen Drugs Co., Inc. To secure the unpaid portion of the purchase price, defendant took back a chattel mortgage covering the contents of the premises and including specifically among other things four used cash registers. Said chattel mortgage contained an after-acquired clause and authorized the debtor to replace any of the collateral with fully paid for property of at least equal value and utility;
2) Defendant filed its financing statement in New York County on November 26, 1969 and with the Department of State in Albany on November 28, 1969;
3) On November 24, 1969 Aberdeen’s president signed a conditional sales contract with plaintiff for the purchase of two new cash registers. The contract provided a trade-in allowance of $125 on the four old cash registers. The contract designated the purchaser as “ Mishkins Drug, Inc. ” (an apparently non-existing corporation and apparently written in by plaintiff prior to execution). Delivery of the two new cash registers was taken on the premises on November 26,1969;
4) Plaintiff filed its financing statement in New York County and with the Department of State in Albany on December 3, 1969. Said financing statement designated the debtor as “ Mishkin’s Drug, Inc.,”, the same name as used for the purchaser on the conditional sales contract;
*388 5) On December 2,1969 Aberdeen’s president signed a second conditional sales contract with plaintiff for the purchase of an additional cash register, delivery of which was taken on the premises on December 4, 1969. The same error as to the name of the purchaser was repeated;
6) Plaintiff filed its financing statement for this additional cash register in New York County and with the Department of State in Albany on December 29, 1969. The same error as to the name of the debtor was repeated;
7) On June 24, 1970 defendant foreclosed on its chattel mortgage selling the contents of the premises including the three new cash registers to itself at a public sale on notice to plaintiff among others;
8) On June 30, 1970 plaintiff replevied the three new cash registers and commenced the instant replevin action;
9) On July 2,1970 defendant filed a counter-replevin bond and reclaimed and still has possession of the three new cash registers;
10) On July 9, 1970 defendant answered in the instant action interposing two counterclaims for the value of the four old cash registers and for damages for the illegal replevin.
11) Subsequently defendant brought on the instant motions for an order dismissing plaintiff’s complaint and for judgment on its two counterclaims. Plaintiff cross-moved for summary judgment and dismissing the counterclaims.
Defendant obtainted a valid after-acquired property security interest in the three new cash registers pursuant to section 9-108 of the Uniform Commercial Code. Its interest attached on or before November 25, 1969 pursuant to subdivisions (1) and (3) of section 9-204 of the Uniform Commercial Code, and its interest was perfected on November 26, 1969 by filing pursuant to sections 9-302 and 9-304 of the Uniform Commercial Code.
Plaintiff does not dispute this but relies on the priority given to the holder of a purchase money security interest pursuant to subdivision (4) of section 9-312 of the Uniform Commercial Code. Plaintiff is in error.
Certainly as to the additional or third new cash register, plaintiff is entitled to no priority because its security interest therein was not even purportedly perfected within the 10-day grace period after delivery to debtor allowed by said subdivision (4) of section 9-312 of the Uniform Commercial Code. As to the first two new cash registers, plaintiff also is entitled to no priority because of the misnomer of the debtor’s name in violation of subdivision (3) of section 9-402 of the Uniform *389 Commercial Code. Its security interest therein was simply never properly perfected. The Uniform Commercial Code adopts a system of notice filing to put a searcher on inquiry. It is true that pursuant to subdivision (5) of section 9-402 of the Uniform Commercial Code minor errors which are not misleading will not result in invalidating a filing (Beneficial Fin. Co. of N. Y. v. Kurland Cadillac-Oldsmobile, 57 Misc 2d 806 [filing under name “Shelia Hardy” instead of “Sheila Hardy ”], revd. on other grounds, 32 A D 2d 643; Block Bros. Paper Co. v. Larkin, 198 Misc. 669 [filing under name “ Efficiency Direct Mail Service, Inc.”] ; but see General Motors Acceptance Corp. v. Haley, 329 Mass. 559 [filing under name “ E. R Millen Co.” instead of “ E. E. Millen Co., Inc.”]). However, it cannot be contended that a completely different name in lieu of the debtor’s real name is not misleading. Subdivision 5 of section 9-402 of the Uniform Commercial Code has been held not to cure far less serious misnomers (Deere Go. v. Pahl Constr. Co., 59 Misc 2d 872 [filing under name “ Banelli ” instead of “ Banalli ”], affd. 34 AD 2d 85; National Cash Register Co. v. Valley Nat. Bank of Long Is., N. Y. L. J., June 3, 1968, p. 2, col. 4 [filing under the name “Boywald” instead of “ Borgwald ”]).
Plaintiff argués that such a drastic penalty should not be visited upon it here because, despite the misnomer, its filing was good enough to give defendant notice. In substantiation plaintiff points to the fact that defendant gave it notice of the public sale. Plaintiff’s argument is premised on a distortion of the legal situation and probably of the factual situation also. At issue here is not the protection of a later taker with actual knowledge of a prior interest which had been improperly perfected but rather the protection of an earlier taker against a later interest which had been improperly perfected. Furthermore defendant undoubtedly obtained notice of plaintiff’s interest when it walked into the premises and found three shiny new cash registers rather than as a result of plaintiff’s filing.
Even if the court were to find plaintiff’s filings valid, the result would have to be the same. At issue here is not the priority of plaintiff’s purchase money interest over an earlier but different type of interest. Defendant had a purchase money interest also as same is defined in section 9-107 of the Uniform Commercial Code. There is no basis for holding that the nature of its interest has been changed because it included an after-acquired property provision. Nor does it make any difference that it gave up legal title while plaintiff retained legal title. *390 And as between equal interests priority is not to be determined pursuant to subdivision (4) of section 9-312 of the Uniform Commercial Code but rather pursuant to subdivision (5) of section 9-312 of the Uniform Commercial Code. Defendant’s undisputed earlier filing, earlier perfection and earlier attachment must win the day.
Turning next to defendant’s counterclaims, defendant is of course entitled to any damages which it can prove resulted from plaintiff’s improper levy on the new cash registers. With respect to defendant’s claim for the fair value of the old cash registers, it specifically authorized replacement thereof. Accordingly, its interest therein or in the proceeds thereof ceased upon such replacement. Legally stated it no longer had a perfected security interest therein pursuant to subdivisions (2) and (3) of section 9-306 of the Uniform Commercial Code. The fact that full payment had not been made for the replacement might increase the size of defendant’s deficiency judgment against the debtor if it could show that the original chattel was more valuable than the replacement, or render the debtor otherwise liable in damages, but, as to plaintiff, defendant cannot have his cake and eat it too.
Accordingly, plaintiff’s complaint is dismissed, defendant’s first counterclaim is dismissed, and defendant’s second counterclaim is set down for an assessment.
Settle order on notice providing a date for the assessment at least two weeks after the settlement date, providing for service of a notice of trial if same has not already been done, and providing for service of a copy of the order to be served upon the calendar clerk without undue delay.