In the Matter of **FIBRE GLASS BOAT CORPORATION, Bankrupt.**

**No. 69–420–BK.**

United States District Court,
S. D. Florida.

March 15, 1971.

Paul G. Hyman, of Feibelman, Friedman, Hyman & Britton, Miami, Fla., for petitioner.

William Kendrick, of Shutts & Bowen, Miami, Fla., for respondent Teleflex Industrial Products.

### ORDER

FULTON, Chief Judge.

This cause came before the Court upon a petition of C. B. Johns, trustee of the bankrupt estate, for review of an

order of the Bankruptcy Court dated May 1, 1970.

Teleflex Industrial Products, Inc. filed a claim in bankruptcy as a secured creditor with a security interest in certain assets of the bankrupt, including "all inventory used in the production of boats." It supported its claim with a financing statement filed in accord with Florida Statutes §§ 679.9–401, 679.9–402, F. S.A., and a letter from the comptroller of the bankrupt, Fibre Glass, to the creditor-claimant, Teleflex, dated February 18, 1969, which provided:

> Pursuant to our telephone conversation, please find a duly executed copy of a financing statement received from your company, wherein the Fibre Glass Boat Corp. agrees to guarangee (sic) all inventory used in the production of boats, limited in the amount of fifteen thousand dollars, in order to cover all merchandise that may be purchased from your company.

By considering both the letter and the financing statement together, the Bankruptcy Court found that claimant Teleflex had a valid security interest in the inventory of Fibre Glass Boat used in the production of boats *as of the date of the bankruptcy.*

Petitioner has presented two issues on review. Whether the Referee erred in finding that the letter and the financing statement gave rise to a valid security interest, and whether the Referee erred in holding that the creditor-claimant Teleflex was entitled to a security interest in the specific inventory as of the date of the bankruptcy where no after-acquired property clause appeared in either the letter or the financing statement.

Section 9–109 of the Uniform Commercial Code classifies "goods" into four groups. Goods are "inventory if they are held by a person who holds them for sale or lease or to be furnished under contracts of services or if he has so furnished them, or if they are raw materials, work in progress or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment." U.C.C. § 9–109. "Equipment," on the other hand, as defined by § 9–109, includes goods used or purchased for use primarily in business which are not inventory. According to Official Comment 3, U.C.C. § 9–109, goods are equipment when they are fixed assets or have a relatively long use. Inventory, in contrast, is goods used up or consumed in the production of an end product or held or prepared for sale.

It is clear that claimant Teleflex holds a valid security interest in the bankrupt's inventory used in the production of boats. Uniform Commercial Code § 1–201(37) defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation." Section 9–203 of the U.C.C. provides that a security interest is not enforceable against third parties unless the debtor has signed a security agreement which contains a description of the collateral. Thus, to be a "security agreement" an agreement must be written, contain the debtor's signature, and contain a description of the collateral. *See also* Official Comment 1, U.C.C. § 9–203. An added step is necessary for the agreement to "attach;" value must be given and the debtor must obtain rights in the collateral. U.C.C. § 9–204. To "perfect" the interest, the third step of filing a financing statement must be taken. U.C.C. § 9–302. "Perfected" security interests ordinarily take priority over unperfected but attached interests. *See* U.C.C. § 9–301.

In this case, a financing statement was filed with the proper State authorities in accord with Florida law. Both the creditor and the debtor signed it, and it contained a description of the collateral. Additionally, the debtor Fibre Glass sent a signed letter to Teleflex describing the collateral. These two instruments certainly create a perfected security interest. The three formal elements necessary to create a security interest—a writing, the debtor's signa-

ture, and a description of the collateral —are present in the letter, and the letter fulfills the requirements of § 9–204, attachment. The financing statement "perfected" this interest.

■ The second issue presented by the petitioner is whether this security interest creates a lien upon inventory used in the production of boats acquired *after* entry into the agreement. Since neither the letter nor the financing statement contain an after-acquired property clause, it is urged by the petitioner that Teleflex has no rights in inventory acquired afterwards. Section 9–204(3), U.C.C., validates the use of after-acquired property provisions in financing transactions. *See* Official Comment 1, U.C.C. § 9–108. "A security agreement *may* provide that collateral, whenever acquired, shall secure all obligations covered by the security agreement." A debtor's intent to grant a security interest in after-acquired property must be judged from the language of the agreement. National Cash Register v. Firestone & Co., Inc., 346 Mass. 255, 191 N.E.2d 471 (1963). According to In re Taylor Products, Inc., 5 U.C.C. Reporting Service 286 (W.D.Mich.1968), to permit an interest in property acquired after the execution of the security agreement, the agreement must so provide.

However, the property secured in this case is inventory, goods held for sale and goods consumed in the business. Inventory by its nature and definition changes from day to day. In Bank of Utica v. Smith Richfield Springs, Inc., 58 Misc.2d 113, 294 N.Y.S.2d 797 (1968), it was held that the collateral "motor vehicles" gave the creditor a security interest over after-acquired motor vehicles. Adding the words "after-acquired" to the collateral's description was not necessary because the debtor, an automobile dealer, was obviously buying and selling cars in pursuit of that business. *See also* In re Goodfriend, 2 U.C. C. Reporting Service 160 (E.D.Pa.1964). Surely the creditor would not enter into a financing arrangement secured by collateral fixed on a particular date, when the collateral by its nature would be constantly changing. It would be straining the normal meaning of the word to find that inventory meant only that on hand on the particular day the contract was executed, and if a can of paint or the like were used, the collateral would be diminished to that extent. Certainly the parties contemplated that the inventory would be sold or used and replaced; that is what inventory means. Thereupon, it is

Ordered and adjudged that the petition for review be and the same is hereby denied.