In the Matter of CENTENNIAL INDUS-
TRIES, INC., d/b/a Biddle Purchasing
Company, R. K. Carter & Co., Kanowitz,
Farese & Co., Cam International, Har-
ben Company, Gotham Druggists' Sup-
ply, Auto Parts & Gear, Jabros Auto
Parts & Warehouse, and Atlantic Can
Co., Debtors.

MAREMONT MARKETING,
INC., Plaintiff,

v.

CENTENNIAL INDUSTRIES, INC.,
et al., Defendants.

Bankruptcy No. 78 B 1658.

United States Bankruptcy Court,
S. D. New York.

Feb. 26, 1980.

See also, Bkrtcy., 3 B.R. 414.

MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

In the instant action, the plaintiff, Maremont Marketing, Inc., ("Maremont") seeks

an order establishing the validity of its security interest in certain collateral consisting of inventory supplied by the plaintiff to the defendant-debtor, Centennial Industries, Inc., ("Centennial"). The order sought would require vacating an automatic stay imposed by Bankruptcy Rule 11–44(a) and directing Centennial to surrender the collateral, or alternatively, to pay a sum equal to the value of such collateral. Centennial, as debtor-in-possession, has cross-moved for summary judgment seeking to invalidate the security interest under the strongarm clause, § 70(c) of the Bankruptcy Act, (formerly 11 U.S.C. § 110(c)) *. By order of this court dated November 13, 1978, the proceeds of the collateral in question are being held in escrow pending a determination of this proceeding.

The issue to be decided by this court is whether Maremont, in filing a 1978 continuation financing statement against "Jabro Auto Parts Warehouse, Inc.", which since 1974 has been a division of Centennial, has complied with the requirements of § 9–402 of the Uniform Commercial Code (UCC) and thereby possesses a validly perfected security interest. For the reasons set forth below, I find that Maremont has "seriously misled" Centennial's creditors within the context of § 9–402 and that Centennial, pursuant to § 70(c) of the Bankruptcy Act, may avoid the lien asserted against its inventory.

No hearings were held on these motions as the parties, by written stipulation dated June 20, 1979, agreed on the facts as set forth before this court.

Maremont, a manufacturer of auto exhaust system products, began supplying Jabro Auto Parts Warehouse, Inc. ("Jabro, Inc.") in 1973. On August 15, 1973, Maremont and Jabro, Inc. executed a security agreement which gave Maremont a security interest in all of its (Maremont's) products and proceeds thereof held by Jabro, Inc. On August 28, 1973, Maremont filed financing statements in the office of the Secretary of State and in the City Register of New York, Kings County. In each of these statements, the debtor was styled "Jabro Auto Parts Warehouse, Inc."

In 1974, Jabro, Inc. was merged into Centennial and was thereafter called Jabro Auto Parts Warehouse, Inc. and denominated a division of Centennial, ("Jabro"). It is not disputed that at all times subsequent to August 1976, Maremont had notice that Jabro was operating as a division of Centennial. Nonetheless, on August 15, 1978, Maremont filed a continuation financing statement, and styled the debtor "Jabro Auto Parts, Inc." without cross-indexing to Centennial.[1] On September 13, 1978, Centennial filed a petition under Chapter XI of the Bankruptcy Act. As of that date, Maremont had a claimed security interest of $78,354.84 in the inventory held by Jabro.

Cast against this factual background, the relevant statutory provision is § 9–402(7) which deals specifically with the formal requirements of a financing statement given a change in the debtor's corporate status. This provision states in pertinent part:

> Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new financing statement is filed before the expiration of that time.[2]

Generally, § 9–402 is a notice-filing statute calculated only to indicate that the party filing such notice may have a security inter-

---

* The Chapter XI petition being filed prior to October 1, 1979, the applicable law is the Bankruptcy Act and not the new Bankruptcy Code. See Bankruptcy Reform Act of 1978, § 403.

1. Cross-indexing is not automatic in New York but is available pursuant to § 9–403(5)(c) for a fee of $.50.

2. There is no dispute that none of the inventory currently in the possession of Jabro was acquired prior to 1975, hence operation of this section will invalidate Maremont's security interest in all the aforementioned collateral.

est in the collateral described. As stated in *Beneficial Finance Co., v. Kurland Cadillac-Oldsmobile, Inc.*, 32 A.D.2d 643, 300 N.Y. S.2d 884, 887 (2d Dept.1969):

> The purpose of a notice-filing statute is to give protection to a creditor by furnishing to others intending to enter into a transaction with the debtor a starting point for investigation which will result in fair warning concerning the transaction contemplated. (citations omitted).

*See also Marine Midland Bank v. Conerty Pontiac-Buick, Inc.*, 77 Misc.2d 311, 352 N.Y. S.2d 953 (Sup.Ct.Albany Cty.1974); *John Deere Co. v. William C. Pahl Construction Co.*, 59 Misc.2d 872, 300 N.Y.S.2d 701 (Sup. Ct.Onondaga Cty.1969), aff'd 34 A.D.2d 85, 310 N.Y.S.2d 945 (4th Dept.1970); *Bank of Utica v. Smith Richfield Springs, Inc.*, 58 Misc.2d 113, 294 N.Y.S.2d 797 (Sup.Ct.Oneida Cty.1968). However, while simple notice is sufficient, the secured party has the burden of insuring that the notice is not illegible, misleading, or inaccurate. *John Deere Co., supra*, cf. *In re May Industries, Inc.*, 380 F.Supp. 1 (S.D.N.Y.1974).

■ Maremont acknowledges that the designation of "Jabro Auto Parts Warehouse, Inc." as the debtor in its 1978 continuation financing statement was not technically correct and it concedes that absent cross-indexing, a creditor of Centennial who searched for a statement filed against "Centennial Industries, Inc." would have no notice of Maremont's interest in Jabro's inventory. However, it asserts that this court should ignore the change in corporate structure and treat Jabro Auto Parts Warehouse, and not Centennial as the debtor.

I find no merit to this argument.

A corporate merger contemplates that absorption of one corporation by another which retains its corporate name and identity. The successor corporation operates with the added capital and assets but is subject to the debts and other obligations of the absorbed corporation. *Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F.Supp. 834, 838 (S.D.N.Y.1977). Consequently, upon the merger, Jabro, Inc. ceased to exist and Centennial Industries, Inc. d/b/a Jabro Auto Parts Warehouse became the indebted party. Maremont had notice of the merger and continued to extend credit to Jabro after receiving such notice. In a letter sent to A. J. Armstrong Co., Inc. and Lazere Financial Co., in which it subordinated its claims in favor of these lenders, Maremont acknowledged Centennial's indebtedness to it. In this letter Maremont stated:

> "The undersigned has heretofore entered into certain financing arrangements pursuant to which it has filed Uniform Commercial Code Financing statements against Centennial Industries, Inc. and certain of its affiliates of divisions."

There is no substance to the Maremont argument. Centennial was the legally obligated party and will be treated as such for all purposes by this Court.

Nor do I agree with Maremont's contention that the designation of the name of debtor as "Jabro Auto Parts Warehouse Division of Centennial was not misleading. It is clear that a financing statement filed against "Jabro Auto Parts Warehouse, Division of Centennial Industries, Inc. would be insufficient to validate Maremont's security interest.[3] Jabro Auto Parts Warehouse is

---

**3.** I am aware of the cases cited by Maremont in which notices filed pursuant to § 9–402, while not technically correct, were nevertheless sustained. In each case the designation of the debtor was alphabetically correct; notice of the claim could be discovered given an examination of the record. Thus, in *Kittyhawk Television Corp. v. RCA Corp.*, 516 F.2d 24 (6th Cir. 1975) a filing under "Kittyhawk Television Corp." was held sufficient to perfect a security interest against a debtor whose name was changed to "Kittyhawk Broadcasting Corp.". In *In re Excel Stores, Inc.*, 341 F.2d 961 (2d Cir. 1965), a filing under "Excel Department Stores" was held sufficient to identify "Excel

Storres Inc." Similarly, filings under "Recco Electric" instead of "recco Electric Co., Inc. and "Peterbuilt Incorporated" instead of "Peterbuilt, Inc." were sustained in *Matter of Reeco Co., Inc.*, 415 F.Supp. 238 (S.D.Me.1976). Consequently, if Maremont was required to style the debtor "Jabro Auto Parts Warehouse, Division of Centennial Industries, Inc., a notice filed against "Jabro Auto Parts Warehouse, Inc." would be sufficient to validate its security interest. However, the aforementioned cases are inapposite as I find that such notice is not sufficient and would not validate the security interest.

merely a trade name of Centennial and in the instant case so styling the debtor will not serve to validate the security interest. In this regard I am instructed by *Siljeg v. National Bank of Commerce of Seattle*, 509 F.2d 1009 (9th Cir. 1975). In *Siljeg*, the trustee in bankruptcy sought to invalidate security interest perfected against Henry House Packing Co., Inc. (Henry House). Prior to the transaction giving rise to the lien, Henry House merged with Empire Packing Co. (Empire) pursuant to an agreement which called for Empire to be the surviving corporation but requiring it to change its name to Henry House. While the Secretary of State certified the merger, a proper amendment of name was not filed and the trustee argued that the "true name" of the surviving corporation was Empire. In reversing the District Court's grant of summary judgment to the defendant and remanding for further factual findings, the court stated:

> We do not believe, however, that the answer lies in the simple determination of . . . the "true name" of the [debtor] . . .
>
> Of course, in most cases it is helpful to determine the "true name" of the entity so long as it is recognized that this merely is a step toward the answer and not the answer itself. The inaccurate name is measured against the real name to determine if it was seriously misleading to other creditors.

> .    .    .    .    .

> [T]he question in the present case is not whether "Henry House Packaging Co., Inc." was the true name of the surviving entity but whether creditors of the corporation would have been seriously misled.

*id.* at 1011–1013 (citations omitted)

So too, the focus of this court is not on whether Jabro Auto Parts Warehouse is the true name of the corporation, but whether creditors would be seriously misled by a notice filed under that name.

In *In re Leichter*, 471 F.2d 785 (2d Cir. 1972), the debtor Matthew R. Leichter, did

business under the trade name of "Landman Dry Cleaners". In holding that a notice filed against "Landman Dry Cleaners" did not comply with § 9–402, the court noted:

> In our case    .   .   .    would a subsequent creditor looking under "Leichter" be lead to find the security interest filed and indexed under "Landman"? We think not, even though Leichter apparently did his business under the trade name.

*id.* at 787.

Similarly, in *In re Levins*, 7 UCC Rep. 1076 (E.D.N.Y.1970), a lien filed against "F&F Luncheonette", the assumed name of Robert L. Levins, was invalidated. The court stated that:

> Since F&F Luncheonette is    .   .   . only an assumed name of the debtor, the insertion of such a name fails to give notice to persons dealing with Robert L. Levins. Since the UCC is a notice statute the use of the name of F&F Luncheonette is ineffective as notice to anyone searching the record against Robert L. Levins.

*id.* at 1080.

Finally, in *In re Pasco Sales Co., Inc.*, 52 A.D.2d 138, 383 N.Y.S.2d 42 (2d Dept.1976), the appellate division invalidated a security interest against "Pacific Supply Co., a division of P.S.C. Products Corp". where the corporate name had been changed to "Pasco Sales Co., Inc."

The similarity of these cases to the instant action is obvious. Just as a financing statement indexed under an individual's assumed or trade name will seriously mislead creditors of that individual, so too will a statement filed under the corporate trade name mislead creditors of that corporation. There is no dispute that a creditor of Centennial searching records under C will have no notice of the claim filed against Jabro Auto Parts Warehouse. The secured party must insure that adequate notice is given to all creditors. *John Deere Co., supra.* Here, Maremont could have protected its claim

and insured effective, proper notice by utilizing the cross-indexing available in both the state and county offices. Indeed, the majority of Jabro's creditors elected to do so. Maremont should not be heard to complain now.

Therefore, the relief requested by the creditor is denied and the debtor in possession, pursuant to § 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c) may invalidate the security interest. So Ordered.