**In the Matter of KITCHEN TREND OF HOMEWOOD, INC., Debtor.**

**Bankruptcy No. 85–0548.**

United States Bankruptcy Court, N.D. Alabama, S.D.

Nov. 26, 1985.

Richard L. Vincent of Vincent & Hasty, P.C., for trustee.

R. Stephen Griffis of Thompson & Griffis, P.C., for Borg-Warner Acceptance Corp.

### OPINION

CLIFFORD FULFORD, Bankruptcy Judge.

This core proceeding [28 U.S.C. § 157(b)(2)(K)] involves the competing interests of Borg-Warner Acceptance Corporation (Borg-Warner) and the Trustee of the bankruptcy estate of the debtor, Kitch-

en Trend of Homewood, Inc. (K.T. of H'wood) in $2,791.50 worth of financed inventory. The outcome of this matter is affected by Borg-Warner's previous relationship with the Debtor and with two similarly named corporations, Kitchen Trend, Inc. (K.T., Inc.), and Kitchen Trend of Birmingham (K.T. of B'ham). The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

During the separate existence of the three Kitchen Trend corporations, at least K.T. of B'ham and K.T. of H'wood were located, at one time or another, at 2927 18th Street South, Birmingham, Alabama.[1] The parties did not present detailed information to explain any other connection between these two corporations, or between them and K.T., Inc. They agree that in 1982, K.T. of H'wood acquired all the assets of K.T. of B'ham. Borg-Warner maintains that the principals operating these businesses at 2927 18th Street South were the same but offered no proof in support of that contention. The Court takes judicial knowledge, pursuant to Rule 201 of the Federal Rules of Evidence, of present information on file with the Secretary of State of Alabama. K.T., Inc., was incorporated in Jefferson County, Alabama on April 15, 1975 by James T. Cochran, Rita T. Cochran and George P. Cochran. James T. Cochran is its president. Rita T. Cochran is its secretary. The address is listed as 2927 South 18th Street, Birmingham, Alabama.

K.T. of B'ham was incorporated in Jefferson County, Alabama on June 30, 1981 by a sole incorporator, Rex Logan. It was dissolved on December 29, 1982. On the same day K.T. of H'wood was incorporated

in Jefferson County, Alabama by a sole incorporator, Leslie Earl Tucker, Jr., who is its president. Kathy L. Johnson is its secretary. Its address is shown as 2927 18th Street South, Birmingham, Alabama.

On May 21, 1982, and prior to the K.T. of H'wood takeover, Borg-Warner entered into an inventory security agreement with K.T. of B'ham and filed a U.C.C. 1 financing statement on May 28, 1982, with the Secretary of State of Alabama covering all inventory of K.T. of B'ham, present and after-acquired, and all proceeds thereof.

On June 28, 1984, Borg-Warner entered into an inventory security agreement with K.T., Inc., but did not file a U.C.C. 1 financing statement. On January 9, 1985, after the K.T. of H'wood takeover, Borg-Warner financed $5,583.00 in inventory for K.T. of H'wood but invoiced it to K.T. of B'ham. There was no inventory security agreement with K.T. of H'wood and, of course, no filing with the Secretary of State.

On February 26, 1985, the Debtor, K.T. of H'wood, filed its voluntary bankruptcy petition. It was then that Borg-Warner first learned that K.T. of B'ham had been dissolved and K.T. of H'wood created. Borg-Warner filed a proof of claim for $5,583.00 against K.T. of H'wood based on its 1982 security agreement and financing statement with K.T. of B'ham. This claim has been reduced to $2,791.50.[2]

The issue is whether Borg-Warner's 1982 filed financing statement in the name of K.T. of B'ham is valid against the Trustee of the estate of K.T. of H'wood.

The facts are not in dispute, and it is for the Court to decide whether there is a debt owed by K.T. of H'wood to Borg-Warner, and if there is, whether it is secured or unsecured as against the Trustee.

1. The relationship of K.T., Inc., to either of the other two corporations is unclear. The available facts are these. On June 11, 1985, K.T., Inc., filed a proof of claim against K.T. of H'wood for $32,763.33, as a secured debt. K.T., Inc. lists its address on that proof of claim as 4134 Red Wing Drive, Birmingham, Alabama. The Secretary of State of Alabama currently lists K.T., Inc.'s address as 2927 South 18th Street, Birmingham, Alabama. The Trustee ob-

jected to the claim. On June 18, 1985, this Court allowed the claim as unsecured.

2. The parties agree that the presently disputed claim is $2,791.50, one-half of the original debt. Independent guarantors paid the other one-half, but did not file a claim against the bankruptcy estate.

First, as to the debt, the parties admit that the goods were purchased and delivered to 2927 18th Street South, Birmingham, Alabama, and that K.T. of H'wood disposed of them. The Court concludes that a debt exists from K.T. of H'wood to Borg-Warner.

Second, as to the status of the claim on that debt, Borg-Warner argues that *Code of Alabama*, 1975, § 7–9–402(7) applies. It reads in pertinent part:

> Where the Debtor so changes his name or, in the case of an organization, its name, identity or corporate structure that a filed financing statement becomes *seriously misleading*, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of the transfer.

Emphasis added.[3] Borg-Warner contends that because of the similarity of name and location, its 1982 financing statement is not seriously misleading.

For purposes of clarity, the Court finds at the outset that both the transfer of collateral and the name change provisions of section 7–9–402(7) may be eliminated. This case does not involve the transfer of collateral on which there was a perfected security interest. Similarly it does not involve a name change. K.T. of B'ham did not change its name. It dissolved. If section 7–9–402(7) applies, it is because there was a change in identity or corporate structure.

The Trustee contends that Borg-Warner did not perfect itself against a debt owed by K.T. of H'wood because it did not enter a new security agreement or file a financing statement as required by *Code of Alabama*, 1975, § 7–9–302. From the Trustee's perspective, K.T., Inc., K.T. of B'ham, and K.T. of H'wood were three distinct corporations. None operated as divisions of the other. The principals in each corporation were different.

"[T]he critical inquiry in assessing whether a security interest is perfected is whether a reasonably prudent subsequent creditor would have discovered the prior security interest." *In Re McBee*, 714 F.2d 1316, 1321 (5th Cir.1983). For the reasons stated below, the Court concludes that under either section 7–9–402(7) or because Borg-Warner failed to file on its claim against K.T. of H'wood, the filed financing statement in the name of K.T. of B'ham was not sufficient notice of the K.T. of H'wood debt to Borg-Warner. A reasonably prudent subsequent creditor would not have discovered the prior security interest; but even if it had, that security interest would not be binding on an independent third party such as the Trustee.

In an appeal from a Bankruptcy Court decision in an Alaskan Chapter XI proceeding, the United States Court of Appeals for the Ninth Circuit addressed similar facts. A husband and wife were partners in a partnership which they later incorporated. The business of both was carried on at the same address. Secured transactions, for which financing statements were on file, were conducted by the partnership and an Alaskan bank. The newly formed corporation obtained a loan for which a financing

---

**3.** Section 9–402 of the 1962 code was amended by the official text of the 1972 Uniform Commercial Code to include subparagraph (7). Alabama adopted the recommended change, with variations, in 1981. *See* U.C.C.Rep.Serv. (Callaghan), State Correlation Tables, Sept. 1985 Supp. at 5. These changes significantly changed the law as to whether an initially perfected security interest remains perfected after a later change in a debtor's name, identity or business structure. *See* Burke, *The Duty to Refile Under* *Section 9–402(7) of the Revised Article 9*, 35 BUS.LAW. 1083 (180); Timmey, *Effectiveness of Original Financing Statement Under UCC Article 9 After Change in Debtor's Name, Identity, or Business Structure*, 99 ALR 3d 1194 (1980); B. CLARK, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE para. 2.9, para. 2.11 (1980 & Supp. No. 2, 1985). Consequently, if section 9–402(7) applies, any decisions rendered under the 1962 code are not helpful.

statement was filed, but in the name of the partnership. The Court held:

Since there was no indication on the financing statement that the debtor was the corporation rather than the partnership, the financing statement may not have given notice that the debtor could in fact have been the corporation. In addition, as the bankruptcy court found, even if the searcher had inquired further, the search would have uncovered an underlying security agreement which contained an error just as seriously misleading as the financing statement. We therefore must agree with the bankruptcy court that the financing statement was seriously misleading and that the bank has no perfected security interest in the assets of the corporation.

*In Re McCauley's Reprographics, Inc.*, 638 F.2d 117, 119 (9th Cir.1981).

Bankruptcy courts have reached similar results. In *In Re Beaver Dam Grain, Inc.*, 43 B.R. 283 (Bkrtcy.M.D.Ky.1984), a creditor perfected a purchase money-security interest against the B.C. Christopher, Co. d/b/a Beaver Dam Grain. Another corporation, Beaver Dam Grain, Inc., later on took control of the business. The creditor continued to supply goods for the business under the filed financing statement with all sales to the debtor by the creditor in the name of Beaver Dam Grain. The Court found that the filed financing statement in the name of B.C. Christopher, Co. d/b/a Beaver Dam Grain was insufficient and invalid as to Beaver Dam Grain, Inc. The Court reasoned that there was no security interest because there was no new agreement between the creditor and BDG, Inc., the new entity and owner of the business. The Court held that the creditor's claim was unsecured.

The Bankruptcy Court for the Eastern District of Pennsylvania considered these facts: In 1979, a for-profit corporation, Marta Corporation of Pennsylvania, converted to a not-for-profit corporation known as Marta Group, Inc. Prior to the conversion, a creditor perfected a security interest in all present and after-acquired inventory of the for-profit corporation and timely filed statements to continue perfection. From 1972 to as late as 1982 another creditor consigned goods to the former corporation and to the not-for-profit group. All were "perfected" in the name of the former corporation. The not-for-profit group filed its Chapter 11 petition in 1983. The Court held that the consignee's filing of financing statements in the name of the former corporation were not sufficient. *In Re Marta Group, Inc.*, 33 B.R. 634 (Bkrtcy.E.D.Penn.1983).

In *Matter of Centennial Industries, Inc.*, 3 B.R. 416 (Bkrtcy.S.D.N.Y.1980), a creditor had a security interest, perfected by filing, against Jabro Auto Parts Warehouse, Inc., which was actually a division of Centennial Industries, Inc., but not represented as such. Jabro merged into Centennial and was known as Jabro Auto Parts Warehouse, Inc., and was actually denominated a division of Centennial. The creditor thereafter filed a continuation financing statement in the name of Jabro without cross-indexing to Centennial. The Court considered whether the continuation financing statement was valid and found that upon the merger Jabro ceased to exist. Centennial Industries, Inc. d/b/a Jabro Auto Parts Warehouse became the debtor. The creditor's security interest filed after the merger under the name Jabro Auto Parts Warehouse, Inc., Division of Centennial Industries, Inc., was held misleading and insufficient.

The facts of these cases are such that any other result would emasculate the filing requirements of the Uniform Commercial Code and could place a bankruptcy trustee in an untenable position. K.T. of B'ham and K.T. of H'wood are separate and distinct entities. K.T. of B'ham was dissolved. A new corporation was created. The only financing statement filed was in the name of K.T. of B'ham. Although Borg-Warner entered a later security arrangement with K.T., Inc., it did not file a new financing statement, and even if it

had, this would not have helped. K.T. of H'wood would still, under any circumstance, be a distinct and different legal entity. Borg-Warner financed inventory for this new corporation. It did not enter into a new security agreement or file a financing statement as required by *Code of Alabama,* 1975, § 7–9–302.

Although it could be argued that the corporation may be estopped from denying this creditor its perfected rights, the trustee is not so estopped. Even if a reasonably prudent creditor could have found the prior financing statement, the basis of that statement is a security agreement with a now dissolved corporation. The filed statement is insufficient. As against the Trustee, this is fatal.

In 1983, the United States Court of Appeals for the Fifth Circuit wrote, "In assessing whether a security interest may validly attach to assets of the estate in bankruptcy, the trustee is considered to be a hypothetical lien creditor. Unless a creditor's interest is perfected, as against the trustee in this hypothetical position, its asserted interest in collateral is not effective." *In Re McBee,* 714 F.2d 1316, 1321 (5th Cir.1983). The Trustee here is without knowledge of the security interest, and because a reasonable search by a third party would have revealed only a terminated financing statement in the name of K.T. of B'ham, Borg-Warner's lien was unperfected as to the Trustee who has the status of a hypothetical lien creditor. *See, In Re York Chemical Industries, Inc.,* 30 B.R. 583, 586 (Bkrtcy.D.S.Car.1983). Because the Trustee became a lien creditor before any security interest in the new inventory was perfected, the unperfected security interest of Borg-Warner is subordinate thereto. *Code of Alabama,* 1975, § 7–9–301(b). *See, In Re Amsco, Inc.,* 26 B.R. 358, 362 (Bkrtcy.D.Conn.1982).

It is the opinion of this Court that the debt owed by K.T. of H'wood to Borg-Warner is an unsecured debt.

Judgment will be entered accordingly.