## In re AMERICAN FAMILY MARKETING CORPORATION, Debtor.

**Bankruptcy No. 88–5440–BKC–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 4, 1988.

Joel Treuhaft, Tampa, Fla., for debtor.

Michael Houtz, St. Petersburg, Fla., for Thomas & Antionette Knap.

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY AND TO EXCUSE TURNOVER

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case filed on September 16, 1988 by American Family Marketing Corporation (Debtor). On September 19, 1988, Thomas K. and Antoinette S. Knapp (Knapps) filed a Motion and sought relief from the automatic stay and an Order excusing them from the turnover provisions of § 542 of the Bankruptcy Code. The Motion was scheduled for preliminary hearing in due course and although the Debtor did not file a response to the original Motion, filed an adversary proceeding on September 16, 1988 in which it sought, inter alia, an emergency turnover.

At the preliminary hearing the Court heard argument of counsel for the Debtor and for the Knapps and considered the record that was available at that time and concluded that the Knapps did not have a cognizable interest which would warrant requiring the Debtor to furnish adequate protection nor was their sufficient evidence to form a basis to grant the Motion for Relief from Stay. At the conclusion of the hearing, the Court directed counsel for the Debtor to submit an order for the Court's signature based on the ruling announced orally. No such order was submitted until October 27, 1988. It appears, however, that in the interim, the Knapps filed a Renewed Motion for Relief and sought, in the alternative, adequate protection. The renewed Motion was based on the allegation that subsequent to the original hearing, counsel for the Knapps, through research, found authorities to support the proposition that the Knapps in fact had a valid security interest in the collateral they seek to protect. The record as it appears is without dispute and the facts relevant to the resolution of the issue can be summarized as follows:

On June 3, 1987, the Debtor executed an installment promissory note in favor of the Knapps in the principal amount of $60,000 out of which $30,000 was to be paid at the rate of $2,500 per month for twelve months and in addition, the sum of $30,000 in a lump sum thirty days after the last monthly payment was due under the note. In addition, the Debtor also executed a security agreement in which it granted a security interest, only to 65% of the value of the inventory noted in Exhibit "A" attached to the security agreement. Exhibit "A" is a one page document which specifically identifies various and sundry items referred to as furniture and fixtures and several items described as part of the inventory which included, inter alia, approximately 2,400 tapes, approximately 2,200 Blackbourne storage cases and inventory held for resale (blank tapes, accessories, etc.).

It is without dispute that the Knapps properly filed a financing statement (UCC–1) with the Office of the Secretary of State in Tallahassee on June 16, 1987 together with Exhibit "A", the same exhibit which was part of the security agreement which was discussed earlier.

Originally, it was and still is the contention of the Debtor that inasmuch as the Knapps elected to specify their collateral and neither the security agreement nor the financing statement makes any reference to after acquired properties, the security interest created by the security agreement is limited to the inventory which was in existence on the date of the creation of the security agreement and the security interest does not carry over and does not cover any inventory items acquired by the Debtor after the execution of the security agreement.

In opposing the position urged by the Debtor, counsel for the Knapps contends in his renewed Motion that under the controlling law of this State, a security agreement need only identify the type of collateral and if the collateral is inventory it is unnecessary to make provisions for after acquired property clause because due to the nature of the inventory the interest created does extend to and cover inventory items acquired by the Debtor after the execution of the security agreement.

A review of the controlling decisions cited by counsel and revealed through independent research indicate that a majority

view supports the contentions of the Knapps. The Court of Appeals for the District of Columbia in discussing the identical issue noted that a description of collateral, in that case accounts receivable, sufficiently identified the collateral as to put prospective creditor on notice of the likelihood that the security agreement intended to embrace not only the present but also future accounts receivable. Any other view, the Court noted, would ignore the realities of the world of financing. Based on the foregoing, the Court concluded that the financing statement need not say "future" or "after acquired" in order to include after acquired collateral of the same type described in the security agreement, *citing, American Employers Ins. Co. v. American Sec. Bank,* 747 F.2d 1493 (D.C. Cir.1984). In interpreting the Uniform Commercial Code as adopted in this State by § 679.101 et seq., the District Court for the Southern District of Florida in the case of *In re Fibre Glass Boat Corp.,* 324 F.Supp. 1054, 1056 (S.D.Fla.), aff'd, 448 F.2d 781 (5th Cir.1971) concluded that § 9-204(3) UCC recognizes the interest in after acquired property provisions and permits a provision that the collateral shall secure all obligations regardless of when the collateral was acquired. The Court proceeded to state that it is unnecessary to insert an after acquired property provision in the security agreement because by the very nature of the inventory it is reasonable to infer that it was the intention of the parties to create a security interest in the after acquired inventory items. *See also, Bank of Utica v. Smith Richfield Springs, Inc.,* 58 Misc.2d 113, 294 N.Y.S.2d 797 (1968).

While it is true that there is a minority view which indicates that there must be an express after acquired clause in a security agreement before the interest created extends to and embraces after acquired properties, see *In re Gary & Connie Jones Drugs, Inc.,* 35 B.R. 608 (Bkrtcy.D.Kan. 1983), the minority view clearly ignores the reality of the situation and lacks any support by logic or common sense.

Based on the foregoing, this Court is satisfied that the security interest granted in favor of the Knapps by the Debtor is not limited to the video tapes which were in existence on the date the inventory was on hand but extends to all video tapes acquired thereafter. For this reason, the Knapps are entitled to have their request for adequate protection considered.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that a final evidentiary hearing to determine the proper measure of adequate protection be, and the same is hereby, scheduled for the 21st day of November, 1988 at 4:00 p.m. It is further

ORDERED, ADJUDGED AND DECREED that in the event the Debtor is unable to furnish adequate protection, the Court will consider lifting of the automatic stay.